IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM C. S., | ) |
| | ) |
|      **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 24-CV-028-MTS |
| | ) |
| MARTIN O'MALLEY, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|      **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff William C. S. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant— taking into account his age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc.*

*Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On May 19, 2021, Plaintiff filed applications for Title II disability insurance benefits (42 U.S.C. § 401, *et seq.*) and Title XVI supplemental security income (42 U.S.C. § 1381, *et seq.*) under the Social Security Act.  (R. 30).  He alleged an inability to work beginning on May 19, 2021, due to limitations resulting from traumatic brain injury, hypogonadism, non-functional pituitary, bilateral hearing loss (wears aids), diplopia, gait problems, cognitive issues, skin rashes, depression, and being a brain tumor survivor.  (R. 324).  Plaintiff was thirty-seven years old at the time of the ALJ's decision.  (R. 49, 320).  He completed four or more years of college and has past relevant work as a sales clerk.  (R. 49, 73, 325-26).

Plaintiff's applications were denied both initially and upon reconsideration.  (R. 30, 170-78, 182-88).  At Plaintiff's request, ALJ Claudia Travis conducted an administrative hearing on

May 9, 2023, at which Plaintiff appeared in person and testified. (R. 30, 59-93). ALJ Travis issued a decision on July 5, 2023, denying benefits and finding Plaintiff not disabled. (R. 30-51). Plaintiff sought review by the Appeals Council, which it denied on November 21, 2023. (R. 1-7). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since May 19, 2021, the amended alleged onset date. (R. 32). At step two, she found Plaintiff suffered from severe impairments of history of brain tumor, status post resection (1998) and radiation (with radiation induced panhypopituitarism), hearing impairment, anxiety disorder, depressive disorder, neurocognitive disorder, and autism spectrum disorder. (R. 33). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 34-37). Based upon her consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded Plaintiff retained "the [RFC] to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with the following additional limitations:

> [O]ver the course of an 8-hour workday with standard (i.e., morning, lunch and afternoon, or the equivalent) work breaks, he can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently; sit 6 hours; stand and walk for a combined total of 6 hours; occasionally stoop, kneel, crouch, crawl and balance as those terms are defined in the Selected Characteristics of Occupations; occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds, or otherwise work at unprotected heights; and never work with or around dangerous moving machinery. He can work in no more than a moderate noise environment; cannot perform work requiring him to hear or respond to speech below normal conversational tones (such as whispered or hushed speech) and cannot perform work requiring him to hear accurately over the telephone as part of work tasks. He can learn, understand, remember, and carry out simple instructions, maintaining

>attention and concentration for simple work tasks in 2-hour increments over the course of an 8-hour workday; make simple work-related decisions; respond appropriately to supervision, co-workers, and usual work situations, but not work with the public or perform team or tandem tasks; and deal with occasional changes in a routine work setting. He cannot perform production rate pace work, such as work with hourly production quotas.

(R. 37).

At step four, the ALJ determined Plaintiff had past relevant work as a sales clerk. (R. 49). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of housekeeping cleaner, marker, mail clerk, lens inserter/optical assembler, document preparer, and stem mounter/electrical component assembly, all of which she found existed in significant numbers in the national economy. (R. 50, 88-90). As a result, the ALJ found Plaintiff had not been under a disability from May 19, 2021, through the date of the decision. (R. 50-51).

## Errors Alleged for Review

Plaintiff raises one general allegation of error in his challenge to the Commissioner's denial of benefits on appeal, arguing that the ALJ failed to properly evaluate the medical opinions of audiologist Pamela Matthews, Au.D., and psychologist Alyssa Rippy, Ph.D. (Docket No. 17 at 5-10). Specifically, Plaintiff asserts that although the ALJ found Dr. Matthews' opinion "generally persuasive" and Dr. Rippy's opinion "somewhat persuasive," she failed to explain why certain limitations were absent from the RFC assessment, resulting in an "implicit rejection" of parts of their opinions. *Id*. Defendant contends the ALJ properly evaluated the medical opinions and included limitations in the RFC assessment consistent with both opinions. (Docket No. 21 at 10).

## Consideration of the Medical Opinion Evidence in the RFC Assessment

Medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." *Id*. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "articulate" in the decision how persuasive she finds each medical source's opinion by considering a list of factors. *Id*. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). *Id*. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See id*. §§ 404.1520c(b)(2), 416.920c(b)(2).[1]

The regulations explain that for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

---

[1] Generally, the ALJ is not required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how she considered the other factors. *Id*. §§ 404.1520c(b)(3), 416.920c(b)(3).

Further, "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. She must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

1.  **Dr. Matthews' opinions**

In the decision, the ALJ considered two letters from Dr. Matthews, one dated August 21, 2020, and the second dated September 28, 2021. (R. 43, 47, 630, 632). Dr. Matthews reported that Plaintiff began receiving hearing healthcare services from Pro Hearing on May 3, 2018, at which time he had been wearing hearing aids in both ears for several years and continued to experience hearing difficulties. (R. 43, 630, 632). Plaintiff reportedly had undergone

7

chemotherapy and believed this had caused greater hearing loss in his left ear. *Id*. Dr. Matthews noted Plaintiff's otoscopic examination was within normal limits, but his hearing evaluation demonstrated "a profound high frequency sensorineural hearing loss for the right ear and a severe to profound mixed loss for the left ear." *Id*. His speech measures from audiometric testing from April 16, 2019, "showed 60% speech words recognized for the right ear and 35% recognized for the left ear at loud presentation levels (louder than people can naturally talk)." *Id*. Dr. Matthews indicated that while Plaintiff's hearing aids helped him to hear more conversation around him, his hearing was not corrected to normal limits. (R. 43, 47, 630, 632). In her September 28, 2021 letter, she determined that even with well-fitting hearing aids, Plaintiff would not hear accurately over the telephone, "would be expected to miss words in quiet conversations[,]" and "would miss even more words with the presence of noise or other talkers." (R. 43, 47, 632).

Plaintiff argues that although the ALJ found Dr. Matthews' opinions "generally persuasive," she did not adequately account for the opinions in the RFC assessment and failed to explain why. (Docket No. 17 at 7-8). Specifically, he asserts that while the ALJ included limitations regarding his telephone use in the RFC, the ALJ "implicitly rejected" Dr. Matthews' other hearing-related limitations by finding Plaintiff was "able to work in up to a moderate noise environment subject only to the caveat that he not be required to hear or respond to speech below normal conversational levels (such as at a whispered or hushed level)." *Id*. at 8. According to Plaintiff, the ALJ failed to account for his "increasing hearing difficulty . . . when in more than a quiet environment or when speaking to more than one individual[.]" *Id*. Defendant responds that "the ALJ reasonably accounted for every restriction opined by Dr. Matthews, and . . . reasonably accounted for Plaintiff's known hearing loss in the assessed RFC[.]" (Docket No. 21 at 11-12).

As previously noted, the ALJ found Dr. Matthews' opinions "generally persuasive," determining the opinions were "supported by [Dr. Matthews'] examination findings, and consistent with other evidence of record[,] including the claimant's subjective complaints and some observation of hearing difficulty on consultative examination." (R. 47). When assessing the RFC, the ALJ specifically provided that "[h]earing deficits have been accounted for as described in . . . [the] RFC, with these reasonably consistent with what his hearing doctor stated, and he has also been given hazard restrictions due to him being . . . unable to hear and respond quickly to auditory warnings, hear approaching machines, etc." *Id*.

Contrary to Plaintiff's arguments, the ALJ's consideration of Dr. Matthews' opinions was appropriate, and she included hearing limitations in the RFC consistent with those opinions. The ALJ summarized Plaintiff's treatment by Dr. Matthews in detail and properly set forth her statements regarding his ability to hear. (R. 43, 47). Consistent with Dr. Matthews' comments, the ALJ determined Plaintiff could work in an environment with no more than moderate noise, and he could not perform work that required him to hear or respond to speech below normal conversational tone (such as whispered or hushed speech). Plaintiff also could not perform work involving use of the telephone and was further limited by hazard restrictions. (R. 47). As previously mentioned herein, an RFC assessment does not require direct correspondence with a medical opinion, *Chapo*, 682 F.3d at 1288, and it is the ALJ who ultimately determines the RFC from the medical record. *See Howard*, 379 F.3d at 949. Because Dr. Matthews' opinions did not limit Plaintiff to a certain level of noise, nor did she indicate Plaintiff required a job environment without any noise, the Court finds the ALJ's RFC assessment adequately accounts for Dr. Matthews' opinions regarding Plaintiff's ability to engage in conversations with others and deal with noise in a work environment.

### 2. **Dr. Rippy's opinions**

The ALJ described in detail Dr. Rippy's consultative psychological evaluation of Plaintiff from April 8, 2022. (R. 43-44, 580-84). Dr. Rippy's general observations of Plaintiff included, among other findings, that Plaintiff maintained eye contact at times, had some difficulty hearing, and was cooperative. (R. 43, 580). He exhibited relevant and goal-directed thoughts, but also grammatical errors and odd work patterns sometimes present with autism. *Id*. On mental examination, Dr. Rippy found Plaintiff's comprehension of instructions and conversation was sufficient, his memory for recent and remote events was grossly intact, and his intelligence was in the average range. (R. 44, 582). Plaintiff exhibited good judgment, reported no issues with decision making, and engaged appropriately with Dr. Rippy during the interview. *Id*. However, Dr. Rippy noted Plaintiff's interpersonal skills were impaired due to autism spectrum disorder. *Id*.

Dr. Rippy diagnosed Plaintiff with neurocognitive disorder (secondary to brain tumor and subsequent surgery), autism spectrum disorder (without accompanying intellectual impairment, with mild language impairment), and major depressive disorder (recurrent, currently in remission), noting "[t]his diagnosis is consistent with [Plaintiff's] self-report and presentation and would account for the symptoms described." *Id*. Although she found Plaintiff competent to manage funds, she viewed his prognosis for improvement with cognitive issues and autism spectrum disorder as poor, considering the conditions chronic. *Id*. Dr. Rippy believed Plaintiff "would likely" experience "mild issues" coping with work-related stress and adapting to a workplace environment and with sustained concentration and attention because of anxiety and cognitive issues. *Id*. He would "occasionally" have difficulties with understanding and comprehending instructions. *Id*. She further indicated Plaintiff "would have significant issues interacting with

10

others due to autism and would have difficulty initiating social interactions, reduced eye contact, introversion, and difficulty with judging social cues." (R. 44, 582-83).

Like his argument regarding Dr. Matthews' opinions, Plaintiff asserts that although the ALJ found Dr. Rippy's opinions to be "somewhat persuasive," she failed to include any functional limitations in the RFC accounting for Plaintiff's abilities to interact with supervisors and co-workers. (Docket No. 17 at 9). Defendant contends the ALJ appropriately considered the record evidence and included limitations in the RFC related to Plaintiff's abilities to interact with others that are supported by the evidence. (Docket No. 21 at 13-15).

Plaintiff's argument is without merit. In the decision, the ALJ specifically addressed Dr. Rippy's opinions, noting they were "not specific enough to infer concrete functional restrictions[,]" but she considered them when assessing the RFC. (R. 46-47). She also indicated that Dr. Rippy's "notation of [a] 'poor' prognosis . . . appears to mean [Plaintiff] is unlikely to improve much beyond this baseline, but not necessarily suggestive of greater deficits than described in the [RFC]." (R. 47). Moreover, the ALJ specifically referenced Plaintiff's social limitations, noting that "[w]hile autism was mentioned at the consultative examination, it appears this was based, at least somewhat, on report, as this is not well documented elsewhere within the evidence of record." (R. 48). She indicated that the RFC assessment limited Plaintiff's social interaction "to a greater degree than his past work so whatever problems he did have would be ameliorated by those limitations."[2] *Id*.

---

[2] In the decision, the ALJ summarized Plaintiff's hearing testimony that he occasionally had arguments with supervisors and co-workers centered on his inability to complete job duties "fast enough." (R. 38). The RFC included restrictions limiting Plaintiff's instruction and concentration levels and his decision-making. (R. 37). Plaintiff could not perform work with the public, perform team or tandem tasks, or perform production rate pace work. *Id*.

11

Further, the ALJ again addressed Dr. Rippy's findings and provided additional explanation for the social limitations included in the RFC:

> The undersigned further finds that some social awkwardness and grammar/speech errors were noted at the consultative examination on April 8, 2022 (12F), and history of autism. There was also mention of some difficulty getting along with others when he last worked but overall, he was cooperative and appropriate on examination and there is nothing in the record that is really suggestive of significant altercations or marked deficits. By report, he did some customer service work in his past job(s), and he did not report significant problems with that. However, social restrictions as noted within the record have been considered when finding that he can respond appropriately to supervision, co-workers, and usual work situations, but no work with the public or team or tandem tasks, with the ability to deal with occasional changes in a routine work setting.

*Id*. Accordingly, the Court concludes the ALJ appropriately considered Dr. Rippy's opinions and explained why she did not include more restrictive social interaction limitations in Plaintiff's RFC.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 3rd day of October, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT